NEW ALBANY PARK CONDOMINIUM ASSOCIATION et al., Appellees,

v.

LIFESTYLE COMMUNITIES, LTD. et al., Appellants.

[Cite as *New Albany Park Condominium Assn. v. Lifestyle Communities, Ltd.*, 195 Ohio App.3d 459, 2011-Ohio-2806.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–118.

Decided June 9, 2011.

McFadden, Winner, Savage & Segerman, James S. Savage and Douglas J. Segerman, for appellees.

Newhouse, Prophater, Letcher & Moots, L.L.C., D. Wesley Newhouse, and Barbara K. Letcher, for appellants Lifestyle Communities, Ltd., Onsite Grounds Maintenance, Ltd., and New Albany Park, Ltd.

Vorys, Sater, Seymour & Pease, L.L.P., William G. Porter II, J. Theodore Smith, and Daren S. Garcia, Columbus, for appellants Michael Deascentis, II, Michael Deascentis Sr., Jason Souder, James Frey, and Clark Newell.

---

CONNOR, Judge.

{¶ 1} Defendants-appellants, Lifestyle Communities, Ltd. and New Albany Park, Ltd. appeal from an order of the Franklin County Court of Common Pleas granting the motion of plaintiffs-appellees, New Albany Park Condominium Association, Jared J. Dominak, and Michael D. Montgomery, to certify as a class action their claim for intentional misrepresentation as a violation of R.C. 5311.26. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} Appellants developed a condominium community with 436 units known as New Albany Park. Michael D. Montgomery and Jared J. Dominak each own separate condominium units within New Albany Park. Montgomery and Dominak both purchased their units directly from appellants.

{¶ 3} As part of the condominium sale transaction, appellants gave Montgomery, Dominak, and all other original purchasers a disclosure statement, as required by R.C. 5311.26. The disclosure statements contained a two-year budget for the New Albany Park Condominium Association, along with a statement of the average projected monthly association fee.

{¶ 4} Throughout the construction and sale of the condominiums, the disclosure statement was revised to reflect changes brought on by the addition of a new phase of units, changes in the two-year budget, and the development of other material facts, which could affect the calculation of the projected condominium fee. A total of 16 different disclosure statements were disseminated among the original 436 condominium unit purchasers. Most of those disclosure statements reflect an "average projected assessment per unit per month" of $64, while a few of the disclosure statements reflect an "average projected assessment per unit per month" of $73. The named class representatives received two of the 16 different disclosure statements disseminated to the putative class.

{¶ 5} Appellees contend that the disclosure statements failed to accurately disclose information to the condominium purchasers. Appellees submit that the disclosure statements did not accurately disclose the proper amount of monthly fees required to maintain the association and to be paid by the members.

{¶ 6} On March 8, 2007, appellees filed an amended complaint against appellants, asserting numerous claims.[1] Specifically, appellees asserted claims for declaratory relief, conversion, unjust enrichment, due and owing capital contributions, and due and owing condominium fees, inter alia, as well as claims asserted as a class by Montgomery and Dominak, on behalf of all the New Albany Park condominium owners, for fraud, intentional misrepresentation, negligent misrepresentation, and violation of the Consumer Sales Practices Act.

{¶ 7} On July 5, 2007, appellants filed a motion for partial judgment on the pleadings with respect to three of appellees' class claims. On September 24, 2007, appellees filed a motion seeking class certification. Attached to the motion for class certification were affidavits signed by Montgomery and Dominak in

---

1. The amended complaint asserts multiple claims against a variety of defendants who are not parties to this appeal. We will focus our discussion upon the claims and parties that are relevant to this appeal.

which they outlined their qualifications to act as the class representatives in this action.

{¶ 8} On July 9, 2008, the trial court granted appellants' motion for partial judgment on the pleadings, thereby granting judgment in favor of appellants with respect to the class claims for fraud, negligent misrepresentation, and violation of the Consumer Sales Practices Act. As a result, the only claim remaining for class certification was the claim for intentional misrepresentation, in which appellees asserted that appellants had misrepresented the estimated monthly condominium fees in the disclosure statements, in violation of R.C. 5311.26.

{¶ 9} On January 11, 2008, the trial court granted appellees' motion to certify as a class action the remaining claim for intentional misrepresentation. Appellants filed a timely appeal and assert two assignments of error for our review:

1.  The trial court erred by granting class certification to a class of condominium purchasers to address alleged violations of R.C. 5311.26 where the right to bring a class action to address alleged violations of R.C. 5311.26 is expressly reserved to the attorney general by R.C. 5311.27.

2.  The trial court abused its discretion by granting class certification where the putative class representatives do not satisfy the requirements of Civ. R. 23.

## II. First Assignment of Error—R.C. 5311.26 and 5311.27

{¶ 10} In their first assignment of error, appellants argue that the trial court erred in granting class certification to appellees on a claim involving a violation of R.C. 5311.26 because the right to bring a class action to address violations of this statute is expressly reserved to the attorney general by R.C. 5311.27(C)(1). This assignment of error involves an issue of statutory construction. Statutory construction presents a legal issue, which an appellate court must review de novo. *Fields v. Fairfield Cty. Bd. of MR/DD*, 10th Dist. No. 09AP–208, 2009-Ohio-4388, 2009 WL 2623707, ¶ 15; *Ceccarelli v. Levin*, 127 Ohio St.3d 231, 2010-Ohio-5681, 938 N.E.2d 342, ¶ 8.

{¶ 11} Appellants argue that had the General Assembly intended to allow condominium unit owners to bring a class action to recover damages based upon a violation of R.C. 5311.26, it would have included a mechanism by which a unit owner could do so. However, because it did not include such a mechanism, appellants contend that the General Assembly did not intend to allow that type of remedy for individuals and instead intended to limit its availability.

{¶ 12} In support of their position, appellants cite R.C. 5311.23, which specifically allows one or more condominium unit owners to bring a class action on behalf of all unit owners with respect to actions involving failure to comply with condominium instruments. In reading R.C. 5311.23 in pari materia with R.C.

5311.27, appellants argue that it is obvious that the legislature intended to treat these two claims, which arise under two different circumstances, differently. Thus, appellants assert that the legislature has plainly and unambiguously conveyed its intent to exclude a class action brought by individuals for a violation of R.C. 5311.26.

{¶ 13} Appellants also argue that other legislatures, such as those in Texas and the District of Columbia, have statutes that expressly allow condominium purchasers to file a class action to address violations of disclosure requirements like those found in R.C. 5311.25 and 5311.26. For example, appellants submit that the Texas and District of Columbia statutes do not limit the right to bring such class actions to their attorneys general and that the Ohio General Assembly could have easily followed suit, had it intended not to place such limitations on the right to bring a class action.

{¶ 14} In addition, appellants rely on the doctrine of expressio unius est exclusio alterius in support of their argument that the legislature intended to limit the right to bring a class action for violations of R.C. 5311.26 to the attorney general. Appellants assert that because R.C. 5311.27 expressly provides the attorney general with this remedy but does not mention that same remedy with respect to a class of individual citizens, the remedy was not intended to be available to them, since it was not expressly provided. Consequently, because they argue that the available remedies must be limited to those specifically identified in the statute, appellants submit that a class action cannot be maintained by individual condominium unit owners.

{¶ 15} The Ohio Condominium Act, R.C. Chapter 5311, was enacted by the General Assembly in 1963. Am.S.B. No. 18, 130 Ohio Laws 1425; *Belvedere Condominium Unit Owners' Assoc. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 617 N.E.2d 1075. In 1978, the General Assembly took steps to amend the act by adding new provisions, which included R.C. 5311.25, 5311.26, and 5311.27, in order to protect condominium owners and purchasers from developer abuse. Am.Sub.H.B. No. 404, 137 Ohio Laws, Part II, 2594; *Belvedere.* "It is clear that the Ohio Condominium Act and the 1978 amendments to the Act created relationships, rights, and remedies that did *not* exist at common law." *Belvedere* at 282.

{¶ 16} We disagree with appellants' interpretation of R.C. 5311.27(C) and find that it does not limit the filing of a class action for violations of R.C. 5311.26 to the attorney general.

{¶ 17} R.C. 5311.27(C)(1) states:

If the attorney general has reason to believe that substantial numbers of persons are affected and substantial harm is occurring or is about to occur to

those persons or that the case is otherwise of substantial public interest, the attorney general may do either of the following:

\* \* \*

(b) Bring a class action for damages on behalf of persons injured by a developer's violation of section 5311.25 or 5311.26 of the Revised Code or of the condominium instruments.

{¶ 18} While it is true that R.C. 5311.27(C)(1) does not expressly state that individual condominium unit owners can maintain a class action for violations of R.C. 5311.26, R.C. 5311.27 clearly provides individual condominium unit owners with the right to file a private cause of action against the developer for violations of R.C. 5311.26. R.C. 5311.27(A) and (B). In fact, appellants do not dispute that individual condominium unit owners *do* have a private cause of action against the developer. This difference distinguishes this case from the case cited by appellants, *Roth v. Yonts* (Aug. 19, 1999), 5th Dist. No. 99CA21, 1999 WL 668586, in which the statute at issue did not even provide for a private cause of action.

{¶ 19} The use of the word "may" in R.C. 5311.27(C)(1) indicates that the legislature intended to permit, but does not require, the attorney general to bring an action against a developer if a substantial number of people are affected and if substantial harm is occurring or is about to occur or if there is substantial public interest in the matter. This language further indicates that the legislature intended for there to be another option that could be pursued in the event of a violation of R.C. 5311.26, namely, an individual, private right of action. Thus, the statute indicates that, in addition to pursuit of a private cause of action by an individual condominium unit owner, the attorney general *also* has a right to pursue a remedy against the developer.

{¶ 20} Having established that both an individual condominium unit owner and the attorney general have been provided with the right to sue in the event of a violation of R.C 5311.26 and therefore that both have a right to pursue a remedy against the developer, the next issue is how either one can go about pursuing this remedy. This brings us to the procedural mechanism that can be used to pursue this remedy that has been provided by statute.

{¶ 21} Clearly, R.C. 5311.27(C)(1) provides the attorney general with the right to pursue a class action. However, the existence of one remedy, available through the attorney general, does not exclude the remedy available to individuals through a private right of action. Furthermore, the language of the statute does not restrict the right of private citizens to jointly pursue their private rights of action using the class-action mechanism set forth in Civ.R. 23. Class actions have long been recognized and were known at common law. *State ex rel. White v. Cuyahoga Metro. Hous. Auth.* (1997), 79 Ohio St.3d 543, 545, 684 N.E.2d 72. In addition, the statute does not indicate that the attorney general has the

exclusive right to pursue a class action, nor does it specifically limit pursuit of a class action to the attorney general.

{¶ 22} As stated above, appellants also argue that the doctrine of expressio unius est exclusio alterius precludes appellees from pursuing a class action. Because R.C. 5311.27 expressly provides that the attorney general may bring a class action for a violation of R.C. 5311.26 but does not contain a similar provision for individuals, appellants submit that the intention to limit such actions to the attorney general is implicit. We disagree.

{¶ 23} "The General Assembly is presumed to have known that its designation of a remedy would be construed to exclude other remedies, consistent with the statutory construction maxim of expressio unius est exclusio alterius." *Hoops v. United Tel. Co. of Ohio* (1990), 50 Ohio St.3d 97, 101, 553 N.E.2d 252. Yet "the canon expressio unius est exclusio alterius does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co.* (2003), 537 U.S. 149, 168, 123 S.Ct. 748, 154 L.Ed.2d 653, citing *United States v. Vonn* (2002), 535 U.S. 55, 65, 122 S.Ct. 1043, 152 L.Ed.2d 90; *Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 35.

{¶ 24} "Just as statutory language suggesting exclusiveness is missing, so is that essential extrastatutory ingredient of an expression-exclusion demonstration, the series of terms from which an omission bespeaks a negative implication. The canon depends on identifying a series of two or more terms or things that should be understood to go hand in hand, which is abridged in circumstances supporting a sensible inference that the term left out must have been meant to be excluded." *Chevron U.S.A. Inc. v. Echazabal* (2002), 536 U.S. 73, 81, 122 S.Ct. 2045, 153 L.Ed.2d 82, citing E. Crawford, Construction of Statutes (1940) 337.

{¶ 25} We are not persuaded by appellants' argument that by expressly providing the attorney general with the mechanism to pursue a class action for violations of R.C. 5311.26, the legislature intended to preclude individual condominium unit owners from jointly pursuing a private right of action. Accordingly, we overrule appellants' first assignment of error.

## III. Second Assignment of Error—Requirements of Civ.R. 23

{¶ 26} In their second assignment of error, appellants assert that the trial court abused its discretion in granting class certification because the putative class members do not meet the requirements of Civ.R. 23.

{¶ 27} A trial court's determination regarding class certification is subject to appellate review under an abuse-of-discretion standard. *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 111 Ohio St.3d 118, 2006-Ohio-5339, 855 N.E.2d 444, ¶ 19. An abuse of discretion requires a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. While a trial court has broad discretion in determining whether a class action may be maintained, that discretion "is not unlimited, and indeed is bounded by and must be exercised within the framework of Civ.R. 23. The trial court is required to carefully apply the class action requirements and conduct a rigorous analysis into whether the prerequisities of Civ.R. 23 have been satisfied." *State ex rel. Davis* at ¶ 20, quoting *Hamilton v. Ohio Sav. Bank* (1998), 82 Ohio St.3d 67, 70, 694 N.E.2d 442.

{¶ 28} A party seeking class certification must meet the following requirements before the action may be maintained as a class action pursuant to Civ.R. 23: "(1) an identifiable class must exist and its definition must be unambiguous; (2) the named representatives of the class must be among its members; (3) joinder of all class members must be impracticable because of their number; (4) questions of law or fact must be common to the class; (5) the representative parties' claims or defenses must be typical of the claims or defenses of the class; (6) the representative parties must protect fairly and adequately the interests of the class; and (7) one of Civ.R. 23(B)'s three requirements must be met." *Searles v. Germain Ford of Columbus, L.L.C.*, 10th Dist. No. 08AP–728, 2009-Ohio-1323, 2009 WL 756645, ¶ 6, citing *Hamilton* at 71.

{¶ 29} The trial court determined that appellees satisfied the first six requirements and also satisfied the predominance test set forth in Civ.R. 23(B)(3),[2] thereby meeting the requirements for maintaining a class action. Appellants, however, assert that appellees failed to meet any of the seven criteria for certifying a class action.

## A. Identifiable Class

{¶ 30} Appellants first argue that the class is overbroad and not properly defined. Specifically, appellants assert that because the named class representatives received only two of the 16 different disclosure statements issued to the 436 condominium unit owners, the named class representatives cannot represent those owners who received the other 14 disclosure statements. Appellants also

---

**2.** Under Civ.R. 23(B)(3), a class action may be maintained when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

point out that those owners who purchased the final 25 percent of the condominium units purchased their units after the developer had ceded control to the board of directors. Although appellants acknowledge that the trial court limited the class to those who received disclosure statements before the last day that the developer controlled the board, appellants continue to submit that the putative class is still overly broad and improperly defined.

{¶ 31} "An identifiable class must exist before certification is permissible. The definition of the class must be unambiguous." *Warner v. Waste Mgt.* (1988), 36 Ohio St.3d 91, 521 N.E.2d 1091, paragraph two of the syllabus. " '[T]he requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.' " *Hamilton*, 82 Ohio St.3d at 71–72, 694 N.E.2d 442, quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure (2d Ed.1986) 120–121, Section 1760. The class definition "must be precise enough 'to permit identification within a reasonable effort.' " Id. at 72, 694 N.E.2d 442, quoting *Warner* at 96.

{¶ 32} "While class definitions are obviously tailored to the specifics of every case, important elements of defining a class include: (1) specifying a particular group that was harmed during a particular time frame, in a particular location, in a particular way, and (2) facilitating a court's ability to ascertain its membership in some objective manner." *Reeb v. Ohio Dept. of Rehab. & Corr. Belmont Corr. Inst.* (S.D.Ohio, 2001), 203 F.R.D. 315, 319.

{¶ 33} Furthermore, "[t]he mere existence of different facts associated with the various members of a proposed class is not by itself a bar to certification of that class. If it were, then a great majority of motions for class certification would be denied." *In re Consol. Mtge. Satisfaction Cases*, 97 Ohio St.3d 465, 2002-Ohio-6720, 780 N.E.2d 556, ¶ 10. When possible, the class should be defined based upon the manner in which the defendants acted towards an ascertainable group of individuals. *Hamilton*, 82 Ohio St.3d at 73, 694 N.E.2d 442.

{¶ 34} Here, appellants assert that because there were 16 different disclosure statements disseminated among the putative class members and because the named class representatives received only two of those statements, the named representatives cannot represent the members of the class who received the other 14 statements and therefore do not adequately define the class. However, we disagree.

{¶ 35} The fact that some of the disclosure statements contain minor differences in the dollar amounts does not make this class ill-defined. Rather than

looking at the dollar amount contained in the disclosure statements, our focus is more appropriately placed on the allegedly misleading information contained within the disclosure statements and upon the manner in which the appellants acted toward the 436 condominium unit purchasers. It is the misrepresentations in the disclosure statements that create the identifiable class.

{¶ 36} Furthermore, limiting the class to those to whom appellants sold condominium units and gave disclosure statements at some point before the last day that appellants controlled the board makes the class readily identifiable without expending more than a reasonable effort, particularly given that it is likely that the class could be ascertained by simply looking at appellants' records.

{¶ 37} Thus, the trial court did not abuse its discretion in finding that the class could be properly defined with a reasonable amount of effort.

### B. Class Representatives and Membership

{¶ 38} Appellants contend that the named class representatives are not members of the class they seek to represent, arguing that the representatives are without standing to represent the putative class members who received one of the other 14 disclosure statements disseminated by appellants.

{¶ 39} In order to establish class membership, it is necessary to demonstrate that " 'the representative have proper standing. In order to have standing to sue as a class representative, the plaintiff must possess the same interest and suffer the same injury shared by all members of the class that he or she seeks to represent.' " *Hamilton,* 82 Ohio St.3d at 73 at 74, 694 N.E.2d 442, quoting 5 Moore's Federal Practice (3d Ed.1997) 23–57, Section 23.21[1].

{¶ 40} As discussed above, the class members allege injury as a result of the misrepresentations in the disclosure statements. This is the same injury alleged by the other members of the class. Again, the fact that there may be a small difference in the amounts listed in the disclosure statements is of no consequence here. Thus, appellees have satisfied the class-membership requirement.

### C. Numerosity

{¶ 41} Next, appellants assert that the named class representatives failed to demonstrate that the putative class is so numerous as to render joinder unfeasible. Again, this argument is based upon appellants' assertion that because there were 16 different disclosure statements disseminated and because the named class representatives received only two of those 16 disclosure statements, all 436 putative class members should not be represented by Montgomery and Dominak and they should not be members of the same class.

{¶ 42} Again, we reject this argument for the reasons stated above and because of the large number of class members. While courts have generally declined to specify a numerical limit for the size of a class action, instead finding that such a determination must be made on a case-by-case basis, there is authority indicating that " '[i]f the class has more than forty people in it, numerosity is satisfied; if the class has less than twenty-five people in it, numerosity probably is lacking; if the class has between twenty-five and forty, there is no automatic rule.' " *Warner*, 36 Ohio St.3d at 97, 521 N.E.2d 1091, quoting Miller, An Overview of Federal Class Actions: Past, Present and Future (2d Ed.1977) at 22.

{¶ 43} In this action, there are more than 400 possible class members. The sheer numbers make joinder impracticable. Thus, the trial court did not abuse its discretion in deeming this element satisfied.

### D. Commonality

{¶ 44} Appellants argue that common issues do not predominate over the individual issues inherent in the claim of the named class representatives. Appellants assert that because the named class representatives received two different disclosure statements with two different sets of representations, they did not even establish commonality as to one another, let alone to the hundreds of other putative class members who received one of the other 14 disclosure statements.

{¶ 45} Pursuant to Civ.R. 23(A)(2), there must be "questions of law or fact common to the class." Courts have generally given a permissive application to this requirement. *Warner*, 36 Ohio St.3d 91, 521 N.E.2d 1091, at paragraph three of the syllabus. It requires a "common nucleus of operative facts." Id. However, it is not required that all questions of law or fact raised in the dispute be common to all parties. *Hamilton*, 82 Ohio St.3d at 77, 694 N.E.2d 442. Furthermore, a trial court should not deny class certification based solely on disparate damages. *Ojalvo v. Bd. of Trustees of Ohio State Univ.* (1984), 12 Ohio St.3d 230, 232, 12 OBR 313, 466 N.E.2d 875. This standard "clearly does not require commonality with respect to damages but merely that the basis for liability is a common factor for all class members." Id. at 235.

{¶ 46} Here, the basis for liability—the misrepresentations in the disclosure statements—is a common factor for all 436 class members. While there is a slight difference in the dollar amounts set forth in those statements, the amounts were apparently calculated in the same manner and there are no material differences between the disclosure statements. As a result, the trial court did not err in finding commonality had been established.

### E. Typicality

{¶ 47} Next, appellants submit that appellees did not meet the typicality requirement, arguing that the named class representatives are not typical of the class they seek to represent.

{¶ 48} "Under Civ. R. 23(A)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. The typicality requirement has been found to be satisfied where there is no express conflict between the representatives and the class." *Warner*, 36 Ohio St.3d at 97–98, 521 N.E.2d 1091. Typicality does not require an exact identity of claims. *Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 485, 727 N.E.2d 1265. "[I]nsistence that appellants be 'identically situated' to the potential class members is too demanding a test for typicality." Id. at 484.

{¶ 49} " 'The rationale for this provision is that a plaintiff with typical claims will pursue his or her own self-interest in the litigation and in so doing will advance the interests of the class members, which are aligned with those of the representative. In such a case, the adjudication of the plaintiff's claim regarding defendant's wrongdoing would require a decision on the common question of the defendant's related wrongdoing to the class generally.

{¶ 50} " * * * [A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.' " *Baughman* at 485, quoting 1 Newberg on Class Actions (3d Ed.1992) 3–74 to 3–77, Section 3.13.

{¶ 51} In the instant case, the claims of the class representatives arise from the same practice or course of conduct as the claims of the other class members and are based on the same theory that the disclosure statements contained misrepresentations. There is no evidence of a conflict between the class representatives and the members of the class. The slight difference in the dollar amounts of the disclosure statements is insignificant. Thus, the trial court did not abuse its discretion in finding that the typicality requirement had been met.

### F. Fair and Adequate Representation

{¶ 52} Appellants also argue that the named class representatives will not fairly and adequately protect the interests of the class, based on the appellants' theory that the different disclosure statements prevent this. Again, we find this argument to be without merit.

{¶ 53} The adequate-representation requirement is divided into two parts: (1) the adequacy of the representative class members themselves and (2) the adequacy of counsel for the representative class members. *Hansen v. Landaker* (Dec. 7, 2000), 10th Dist. No. 99AP–1125, 2000 WL 1803944, citing *Warner*, 36 Ohio St.3d at 98, 521 N.E.2d 1091.

{¶ 54} Here, appellants do not challenge the adequacy of counsel. Therefore, we address only the first part of the requirement relating to the adequacy of the class members. "A representative is deemed adequate so long as his interest is not antagonistic to that of other class members." *Marks v. C.P. Chem. Co., Inc.* (1987), 31 Ohio St.3d 200, 203, 31 OBR 398, 509 N.E.2d 1249, citing 3B Moore's Federal Practice (1987) 23–188, ¶ 23.07[1]. There has been no evidence presented of any conflict between Dominak, Montgomery, and the other class members as to the requested claims for relief, and both class representatives, like the other members of the class, are original purchasers of the condominium units. Additionally, both class members averred that they would fairly and adequately represent the interests of the class members. Therefore, the trial court did not abuse its discretion in finding that this requirement had been met.

### G. Civ.R. 23(B) Requirements

{¶ 55} Finally, appellants argue that appellees failed to satisfy the requirements for class certification under Civ.R. 23(B). Specifically, appellants submit that in granting class certification and in concluding that the requirements of Civ.R. 23(B)(3) had been satisfied, the trial court analyzed only one of the two factors required to certify a class under that provision. Appellees, on the other hand, contend that the requirements of both Civ.R. 23(B)(1) and (B)(3) were met, although the trial court analyzed only certification under Civ.R. 23(B)(3).

{¶ 56} Once the requirements of Civ.R. 23(A) have been met, one of the three requirements set forth in Civ.R. 23(B) must be met as well. "Civ.R. 23(B)(3) asks whether 'the questions of law or fact common to the members of the class predominate over any questions affecting only individual members' so 'that a class action is superior to the available methods for the fair and efficient adjudication of the controversy.'" *Searles*, 2009-Ohio-1323, 2009 WL 756645, at ¶ 20, quoting Civ.R. 23(B)(3).

{¶ 57} In the instant case, the trial court conducted a thorough and rigorous analysis in determining whether the requirements of Civ.R. 23 had been met. The trial court specifically noted that Civ.R. 23(B)(3) provided that a court may certify a class action if the questions of law or fact common to the members of the class predominate over questions affecting only individual members and if the class action is superior to other available methods for the fair and efficient adjudication of the action. The trial court then determined that the procedure

used by appellants to compute the monthly assessments was flawed, which resulted in the misleading disclosure statements, and that the same procedure was used to generate every disclosure statement provided to the members of the putative class.

{¶ 58} Because the trial court found that evidence of the method used by appellants to calculate the monthly assessments, as well as evidence of the disclosure statements actually disseminated, would either prove or disprove the claims of all of the members of the putative class, particular factual issue predominated over the entire action. Furthermore, without specifically stating so, the trial court evidently believed, based upon its analysis of all of the other factors, that a class action was the superior and preferred method for adjudicating this controversy and thus that the requirements of Civ.R. 23(B)(3) had been met.

{¶ 59} Even if our interpretation of the court's implicit analysis of this issue is incorrect, we nevertheless agree that the trial court properly determined that the requirements of Civ.R. 23(B)(3) were satisfied, based upon the evidence contained in the record. See *Searles,* 2009-Ohio-1323, 2009 WL 756645, at ¶ 24, citing *State ex rel. Arcadia Acres v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 08AP–229, 2008-Ohio-6127, 2008 WL 5049739, ¶ 30 (an appellate court must affirm if a judgment is legally correct on other grounds, where any error is not prejudicial in light of the correct judgment reached by the trial court). In addition, we find that appellees can satisfy the requirements of Civ.R. 23(B)(1), in that separate actions by individual members of the class would create a risk of inconsistent and/or varying adjudications, which could also be dispositive of the interests of the other members of the class who were not parties to that particular adjudication.

{¶ 60} Therefore, we conclude that the trial court did not abuse its discretion in determining that all of the requirements of Civ.R. 23 were met. As a result, we overrule appellant's second assignment of error.

## IV. Conclusion

{¶ 61} Based upon the foregoing, we overrule appellants' first and second assignments of error. The order of the Franklin County Court of Common Pleas is affirmed.

Order affirmed.

BROWN and TYACK, JJ., concur.