[Cite as *Musial Offices, Ltd. v. Cuyahoga Cty.*, 2014-Ohio-602.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99781**

# MUSIAL OFFICES, LTD.

PLAINTIFF-APPELLANT
and CROSS-APPELLEE

vs.

# COUNTY OF CUYAHOGA, ET AL.

DEFENDANTS-APPELLEES
and CROSS-APPELLANTS

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-746704

**BEFORE:** E.T. Gallagher, J., Keough, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** February 20, 2014

**ATTORNEYS FOR PLAINTIFF-APPELLANT and CROSS-APPELLEE**

Patrick J. Perotti
James S. Timmerberg
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, Ohio 44077

Thomas D. Robenalt
Mellino Robenalt, L.L.C.
19704 Center Ridge Road
Rocky River, Ohio 44114


**ATTORNEYS FOR DEFENDANTS-APPELLEES and CROSS-APPELLANTS**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Brian R. Gutkoski
        John F. Manley
        David G. Lambert
Assistant Prosecuting Attorneys
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1}  Plaintiff-appellant, Musial Offices, Ltd. ("Musial"), appeals the denial of its motion for class certification in its case against defendants-appellees, Cuyahoga County ("Cuyahoga County" or "the county"), to recoup overpaid property taxes.  In a cross-appeal, Cuyahoga County challenges the trial court's determination that Musial established certain requirements for class certification.  The county also asserts the trial court lacked jurisdiction to hear Musial's claims.  We find the trial court had jurisdiction and reverse the trial court's judgment denying class certification.

{¶2} Musial is the owner of real property located at 2885 Center Ridge Road, Westlake, Ohio.  In 2005, the county auditor assigned a tax valuation of $679,500 to Musial's property for the 2006, 2007, and 2008 tax years.  In 2009, Musial filed a decrease complaint with the Cuyahoga County Board of Revision ("Board of Revision" or "Board") for the 2008 tax year.  The Westlake Board of Education filed a counterclaim seeking to retain the auditor's valuation.  The Board of Revision did not hold a hearing on Musial's complaint until November 25, 2009.

{¶3} On December 14, 2009, Musial received a property tax bill for the first half of 2009.[1]  The tax bill reflected a tax valuation of $679,500 and indicated that payment was due on January 20, 2010.  On January 13, 2010, Musial received a letter of correction

---

[1] The 2009 tax year was the first year of a triennial period.  Pursuant to R.C. 5715.33, the county auditor must reappraise all real property within the county once every six years, i.e, the "sexennial reappraisal" and reappraise property values at the interim three-year point, i.e., "the triennial update."

from Frank Russo ("Russo"),[2] who served as both the county auditor and secretary of the Board of Revision, stating that the valuation of Musial's Westlake property for the tax year 2008 had been reduced from $679,500 to $499,000. The letter further stated: "If no action is taken, the Board's decision will be reflected in your next tax bill."

{¶4} Musial paid the December 2009 tax bill for the first half of 2009 without protest. In an affidavit, Mark Musial, Musial's principal, explained that because the correction letter indicated the correction would be reflected in Musial's next tax bill, he did not think any further action was necessary. However, in June 2010, Musial received a property tax bill for the second half of 2009 that reflected a tax valuation of $679,500 instead of the Board of Revision's reduced valuation. In response to the tax bill, Mark Musial sent a letter to Russo and the Board of Revision demanding correction of the 2009 valuation. Musial received no response. Mark Musial sent a second letter again demanding correction of the 2009 property valuation on August 31, 2010.

{¶5} Marty Murphy ("Murphy"), the acting administrator of the Board of Revision, called Mark Musial and informed him that "hundreds" of taxpayer were similarly overcharged and that the Board was considering applying its $499,000 valuation to Musial's property for the 2009 tax year. Murphy indicated that if the county made corrections, they would be made without any action from Musial. Murphy also admitted that the Board of Revision's $499,000 valuation for the 2008 tax year should have applied

---

[2] On January 1, 2011, Cuyahoga County converted to a charter form of government pursuant to Article X, Section 3, Ohio Constitution. The new Cuyahoga County Charter created the position of a Fiscal Officer, who is appointed by the County Executive, which replaced the formerly elected Auditor. *See* County Charter 5.02.

to the 2009 tax year. These statements were consistent with reports Mark Musial had read in the Plain Dealer of numerous property owners who were overcharged in their 2009 property tax bills.

{¶6} The corrections Musial sought were never made. Thus, Musial filed a complaint in the Cuyahoga County Common Pleas Court on January 24, 2011, alleging that the county erroneously applied 2007 property values to assess the class members' 2009 property taxes instead of the 2008 value ordered by the Board of Revision. Musial subsequently amended the complaint and asserted claims for disgorgement, unjust enrichment, violation of due process and equal protection, injunctive relief, and mandamus. The county filed a Civ.R. 12(B)(1) motion to dismiss the complaint for lack of subject matter jurisdiction, which the trial court converted to a motion for summary judgment and denied.

{¶7} It is undisputed that the county overcharged numerous property owners in real estate tax bills for the 2009 tax year. On June 28, 2012, Musial filed a motion for class certification asking the court to certify the following class:

> Cuyahoga County property owners who filed a complaint against valuation
> for tax year 2008 that resulted in the Board of Revision reducing the value
> of the property, whose 2009 property value was taxed using a higher value.

Following a hearing, the trial court denied the motion for class certification. Musial now appeals, arguing the court should have granted class certification. In its cross-appeal, the county asserts four assignments of error challenging the trial court's jurisdiction and its determination that Musial established certain factors required by Civ.R. 23 for class

certification.  We discuss the county's fourth assignment of error first because without jurisdiction, the remaining assigned errors would be moot.

### Jurisdiction

**{¶8}** In its fourth cross-assignment of error, the county argues the trial court lacked jurisdiction to hear Musial's complaints because Musial's recourse was through a statutorily prescribed administrative procedure, and there is no legal authority that confers original jurisdiction to the common pleas court for tax valuation complaints.  The county contends Musial illegally attempted to circumvent a statutory scheme that requires it to exhaust its administrative remedies before invoking the court's jurisdiction.

**{¶9}** Although the trial court denied the county's motion for summary judgment, which is an interlocutory order, we are compelled to address the question of subject matter jurisdiction, which may be raised at anytime.  *State ex rel. Wilson-Simmons v. Lake Cty. Sheriff's Dept.*, 82 Ohio St.3d 37, 693 N.E.2d 789 (1998).  Indeed, an appellate court may sua sponte consider subject matter jurisdiction even if it was not raised below. *State ex rel. White v. Cuyahoga Metro. Hous. Auth.*, 79 Ohio St.3d 543, 544, 684 N.E.2d 72 (1997).  Whether the trial court had jurisdiction is a question of law we review de novo. *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, ¶ 4-5.

**{¶10}** Failure to exhaust administrative remedies is not a jurisdictional defect per se.   Nevertheless, Ohio law requires that the complainant must exhaust any administrative remedies before invoking the common pleas court's jurisdiction.  *Jones v.*

*Chagrin Falls*, 77 Ohio St.3d 456, 462, 674 N.E.2d 1388 (1997).[3]  As the United States Supreme Court has stated,

> [e]xhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

*Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).  The purpose of the doctrine "is to permit an administrative agency to apply its special expertise * * * and in developing a factual record without premature judicial intervention."  *S. Ohio Coal Co. v. Donovan,* 774 F.2d 693, 702 (6th Cir.1985).  The judicial deference afforded administrative agencies is to "prepare the way, if the litigation should take its ultimate course, for a more informed and precise determination by the Court."  *Ricci v. Chicago Mercantile Exchange*, 409 U.S. 289, 306, 93 S.Ct. 573, 34 L. Ed.2d 525 (1973).  *See also Nemazee v. Mt. Sinai Med. Ctr.*, 56 Ohio St.3d 109, 111, 564 N.E.2d 477 (1990), quoting *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457 45 L.Ed.2d 522 (1975).

{¶11} The county argues Musial failed to comply with the procedures outlined in R.C. 5715.19 for contesting real property valuations for tax purposes.  R.C. Chapter 5717 also sets forth a specific procedure for the appeal of decisions of a county board of revision to either the Board of Tax Appeals, R.C. 5717.01, or to the court of common pleas in which the property is located, R.C. 5717.05.  Neither chapter authorizes the

---

[3]  *See also Nemazee v. Mt. Sinai Med. Ctr.*, 56 Ohio St.3d 109, 111, 564 N.E.2d 477 (1990) and *Noernberg v. Brook Park*, 63 Ohio St.2d 26, 29, 406 N.E.2d 1095 (1980).

common pleas court to hear valuation disputes involving property valuations for tax purposes unless the matter is before the court on appeal. R.C. 5717.01. Thus, courts of common pleas do not have original jurisdiction to hear property tax valuation cases and have only appellate jurisdiction conferred on them by statute. *See, e.g.*, *Holm v. Clark Cty. Auditor*, 168 Ohio App.3d 119, 2006-Ohio-3748, 858 N.E.2d 877 (2d Dist.) (Many courts have held that compliance with these statutes is jurisdictional and not merely procedural.).

{¶12} However, this case does not involve a valuation dispute. Musial, on behalf of the putative class, is not challenging the Board of Revision's valuation of its property. Musial seeks correction of a clerical error in the auditor's office that reinstated 2007 valuations for the 2009 tax year instead of applying the valuations determined by the Board of Revision. Rather than seek a new valuation for its property, Musial seeks a mandamus order compelling the county fiscal officer to correct the errors and issue refunds.

{¶13} The county asserts that Musial's claims nonetheless challenge the valuation of its property because the 2009 tax year was a triennial update year. Pursuant to R.C. 5715.33, the county auditor is required to update appraisals of real property the third year ("triennial update," R.C. 5715.24; 5715.33) of a six-year period (the "sexennial reappraisal"). The county maintains that these periodic update appraisals prevent carryover of the previous year's valuations. Therefore, the county argues, Musial's class action is in fact challenging the 2009 valuation of its property.

**{¶14}** However, R.C. 5715.19(D) contains carry-over value provisions and continuing complaint provisions. *Columbus Bd. of Edn. v. Franklin Cty Bd. of Revision*, 87 Ohio St.3d 305, 307, 720 N.E.2d 517 (1999). Pursuant to R.C. 5715.19(D), the Board of Revision is required to hear and render a decision on a decrease complaint within 90 days after the filing of the complaint. This 90-day requirement is mandatory, and a taxpayer may not be penalized for the Board's failure to act within 90 days. *Mott Bldg. Inc. v Perk*, 24 Ohio Misc. 110, 263 N.E.2d 688 (1969). Thus, if a complaint filed for the current year is not determined by the Board within the time for such determinations, the complaint and any related proceedings must be continued by the Board as a valid complaint until the complaint is finally determined by the Board. R.C. 5715.19(D); *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 74 Ohio St.3d 639, 660 N.E.2d 1179 (1996).

**{¶15}** Furthermore, the valuation determined by the Board of Revision automatically carries over "for any ensuing year" until the complaint is finally determined. *Id.* This rule holds true even when the ensuing year is the first year of a triennial period, unless the taxpayer files a fresh complaint. *See Cincinnati School Dist. Bd. of Edn*. at 640-643. Indeed,

> it would be ludicrous for a property owner to win a reduction in valuation for a given tax year only to face the old higher value in the ensuing tax year simply because the Board had not issued a determination in a timely manner. The General Assembly clearly intended for there to be stability in property values where none of the exceptions in R.C. 5715.19(A)(2) apply.

*Concord Columbus, L.P. v. Testa*, 122 Ohio App.3d 205, 701 N.E.2d 449 (10th Dist.1997) (Close, J., dissenting).

{¶16} Since the Board of Revision's valuation of Musial's property for the 2008 tax year was determined in 2010, that valuation automatically carried over to 2010. Musial is not challenging the Board's valuation of its property but rather is seeking to enforce the Board of Revision's valuation. Indeed, one of Musial's claims was brought pursuant to R.C. 2723.01, which expressly confers jurisdiction on the common pleas court to hear claims for recovery of overpaid taxes. Musial is therefore not required to comply with the statutorily prescribed administrative proceedings for valuation disputes for the common pleas court to have jurisdiction over Musial's claims.

{¶17} The county's fourth assignment of error is overruled.

### Class Certification

{¶18} In Musial's sole assignment of error, it argues the trial court erred in denying its motion for class certification. In the county's first three assigned errors, it argues the trial court erred in finding that Musial satisfied certain elements necessary for class certification, including typicality, adequacy, and commonality. We discuss these assigned errors together because they are interrelated.

{¶19} To be eligible for class certification pursuant to Civ.R. 23, the plaintiffs must establish the following seven prerequisites: (1) an identifiable and unambiguous class must exist, (2) the named representatives of the class must be class members, (3) the class must be so numerous that joinder of all members of the class is impractical, (4) there must be questions of law or fact that are common to the class ("commonality"), (5) the claims or defenses of the representative parties must be typical of the claims and defenses of the members of the class ("typicality"), (6) the representative parties must fairly and

adequately protect the interests of the class ("adequacy"), and (7) one of the three requirements of Civ.R. 23(B) must be satisfied. *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 125 Ohio St.3d 91, 2010-Ohio-1042, 926 N.E.2d 292, ¶ 6. The party seeking class certification bears the burden of demonstrating that the requirements of Civ.R. 23(A) and (B) are met. *Hoang v. E\*trade Group,* 151 Ohio App.3d 363, 2003-Ohio-301, 784 N.E.2d 151 (8th Dist.).

{¶20} The Ohio Supreme Court has held that "[a] trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent a showing of an abuse of discretion." *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200, 509 N.E.2d 1249 (1987), syllabus. We apply the abuse of discretion standard in reviewing  class action determinations to give deference to "the trial court's special expertise and familiarity with case-management problems and its inherent power to manage its own docket." *Id*. at 201.

{¶21} Nevertheless, "the trial court's discretion in deciding whether to certify a class action is not unlimited, and indeed is bounded by and must be exercised within the framework of Civ.R. 23." *Hamilton v. Ohio Savs. Bank*, 82 Ohio St.3d 67, 70, 694 N.E.2d 442 (1998). The trial court may only certify a class if it finds, after a rigorous analysis, that the moving party has demonstrated that all the factual and legal prerequisites to class certification have been satisfied. *Id*.

{¶22} As previously stated, Musial seeks to certify a class defined as "all Cuyahoga County property owners who filed a complaint against valuation for the tax year 2008 that resulted in the Board of Revision reducing the taxable value of the

property, whose 2009 property value was taxed using a higher value." The trial court found, and it is not disputed, that the class definition is "definite enough so that it is administratively feasible for the court to determine whether a particular individual is a member." *Stammco*, 125 Ohio St.3d 91, 926 N.E.2d 292, at ¶ 7. It is also undisputed that joinder of all members, who are in the thousands, is impractical. And since Musial's complaint seeks an order directing the fiscal officer to correct its failure to apply the Board's valuation to its property for the 2009 tax year, it is a member of the class. Thus, the first three prerequisites enumerated in Civ.R. 23(A) are satisfied.

## Typicality

{¶23} In its first assignment of error, the county argues the trial court erred in finding that Musial's claims are typical of all the members of the class.

{¶24} "The requirement for typicality is met where there is no express conflict between the class representatives and the class." *Hamilton,* 82 Ohio St.3d 67, 70, 694 N.E.2d 442, at ¶ 77. In evaluating typicality, the court must determine "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Neal v. Casey*, 43 F.3d 48, 55 (3d Cir.1994).[4] "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the

---

[4] The Ohio Supreme Court has held that because Civ.R. 23 is virtually identical to Fed.R.Civ.P. 23, "federal authority is an appropriate aid to interpretation of the Ohio rule." *State ex rel. Davis v. Pub. Emps. Ret. Bd.*, 111 Ohio St.3d 118, 2006-Ohio-5339, 855 N.E.2d 444, ¶ 28, citing *Marks v. C.P. Chem. Co., Inc.,* 31 Ohio St.3d 200, 201, 509 N.E.2d 1249 (1987).

claims of the class members, and if it is based on the same legal theory." *Id.*, quoting *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir.1992).

{¶25} Here, Musial's claims are typical of all putative class members because their claims arise from the same course of conduct and are based on the same legal theories. The members of the class are property owners who received a ruling from the Board of Revision lowering their property tax valuations but who were subsequently overcharged because the new values were not reflected in their 2009 tax bills. The members' interests in recovering the amounts they overpaid under these circumstances are completely aligned and there is no inherent conflict of interest. Therefore, the trial court properly found the typicality requirement was met.

## Adequacy

{¶26} In its second assignment of error, the county argues the trial court erred in finding that Musial satisfied the adequacy requirement of Civ.R. 23(A)(4).

{¶27} Adequacy refers to the class representative's ability to protect all the members's interests in the action. In making this determination, courts must consider two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992); *New Albany Park Condo. Assn. v. Lifestyle Communities, Ltd.*, 195 Ohio App.3d 459, 2011-Ohio-2806, 960 N.E.2d 992, ¶ 53 (10th Dist.).

{¶28} A class representative is adequate, provided that his interest is not antagonistic to that of the prospective class members. *New Albany Park Condo. Assn.* at

¶ 54. The representatives' counsel is adequate if the lawyers are "qualified, experienced and generally able to conduct the proposed litigation." *Helman v. EPL Prolong, Inc.*, 7th Dist. Columbiana No. 2001-CO-43, 2002-Ohio-5249, ¶ 49.

**{¶29}** As previously stated, Musial's interests are completely aligned with the interests of all members of the class and there is no evidence to suggest that Musial's interests are antagonistic to those of the other class members. Furthermore, Musial's counsel has demonstrated not only that they are competent to handle class actions, but also that they have been and will continue to zealously prosecute the action on behalf of all members of the class. Therefore, we agree with the trial court's conclusion that Musial and its counsel will adequately protect all class members' interests in the action.

### Commonality

**{¶30}** In the county's third assignment of error, the county argues the trial court erred in finding that Musial satisfied the commonality requirement of Civ.R. 23(A)(2). In its sole assignment of error, Musial argues the trial court erred in finding that it failed to satisfy the predominance requirement of Civ.R. 23(B)(3). The trial court's denial of class certification was based on the predominance requirement of Civ.R. 23(B)(3).

**{¶31}** Pursuant to Civ.R. 23(A)(2), plaintiffs must show that "there are questions of law or fact common to the class." Thus, commonality requires that the class members' claims "'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir.2012), quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 1__, 131 S.Ct. 2541, 2548, 2551, 180 L.Ed.2d

374 (2011). Thus, Civ.R. 23(A)(2) asks whether there are issues common to the class, and Civ.R. 23(B)(3) asks whether these common questions predominate. *Wolin v. Jaguar Land Rover N. Am., L.L.C.*, 617 F.3d 1168, 1171 (9th Cir.2010).

{¶32} The question whether common questions predominate over individual questions is a separate inquiry, distinct from the requirements found in Civ.R. 23(A)(2). *Wal-Mart*, 131 S.Ct. at 2556. This balancing test of common and individual issues is qualitative, not quantitative. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir.1996). Thus, there need be only a single issue common to all members of the class, and the "fact that questions peculiar to each individual member of the class member remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir.1988). Where common issues predominate, the class members "will prevail or fail in unison." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 2__, 133 S.Ct. 1184, 1196, 185 L.Ed.2d 308 (2013).

{¶33} There are several common legal issues affecting the county's liability vis-a-vis the class members. We have already determined that class members' decrease complaints that were not heard and decided within the 90-day period required by R.C. 5715.19 carried over until the Board of Revision ultimately rendered a decision without further filing by the original taxpayer. *See* R.C. 5715.19(D). We have also determined that class members were not required to first file an action with the Board of Revision to correct the valuations reflected in their 2009 tax bills before filing a complaint in the

common pleas court because they were not challenging the valuations. They were merely seeking to enforce the Board's valuation and recover overpayment of taxes.

{¶34} We have not specifically addressed the question whether R.C. 5715.22, which allows for the refund of excess taxes, relieves the class members of any obligation to have paid their 2009 property taxes under protest in order to recover the overcharges in this lawsuit.[5] The answer to this question will affect the county's liability for overcharges.

{¶35} In its journal entry denying class certification, the trial court indicated that fact-specific inquiries are necessary to determine liability and damages and that class certification is therefore "unsuitable." However, the answers to the common legal issues, such as whether plaintiffs were required to pay their 2009 taxes under protest to preserve their rights to recover overcharges, will determine liability for all members.

{¶36} Furthermore, the class members are not disputing the facts individual to each member, such as when the taxpayer was notified of a reduction, when each complaint against valuation was filed, or whether the Board's reduced valuation was properly reflected in the subsequent tax bills. These facts are readily ascertainable from the county's Fiscal Officer's computer system. Even each plaintiff's damages are easily identified without litigation. Since there is no need to litigate these facts, there would be

---

[5] We answered questions regarding whether complaints carry-over when the Board fails to render a decision in a timely manner and whether taxpayers are required to file fresh complaints for subsequent tax years if they have a complaint pending because answers to these questions were necessary for determining the trial court's jurisdiction. We did not answer the question whether taxpayers should have paid their 2009 taxes under protest to preserve their right to recoup overcharges because it did not affect our jurisdictional analysis.

no need for mini trials to establish them. In this case, common legal issues that relate to the county's liability to the class members predominate, even though some individualized inquiry is required to determine damages. Therefore, Musial satisfied the commonality and predominance requirements of both Civ.R. 23(A)(2) and 23(B)(3).

## Statute of Limitations

**{¶37}** In its first three assignments of error, the county argues class certification should have been denied because Musial's claims are barred by the one-year statute of limitations set forth in R.C. 2723.01.

**{¶38}** R.C. 2723.01 states:

Courts of common pleas may enjoin the illegal levy or collection of taxes and assessments and entertain actions to recover them when collected, without regard to the amount thereof, but no recovery shall be had unless the action is brought within one year after the taxes or assessments are collected.

**{¶39}** The county argues that Musial failed to bring this action within one year of paying the second half of its 2009 taxes. The county asserts that Musial paid the second half of its 2009 taxes on January 19, 2010, and Musial commenced this action on January 24, 2011. However, Musial's January 19, 2010 payment was for the first half of 2009. Musial made the payment because Russo's correction letter, dated six days earlier, advised Musial that the Board's decision would be reflected in its next tax bill. It was not until July 2010 that Musial received the tax bill for the second half of 2009, which did not reflect the Board's decision. Musial filed its complaint on January 24, 2011, less than seven months after it paid its second half of the 2009 tax bill. Therefore, Musial's claims for recovery of overpaid taxes are not barred by the statute of limitations.

**{¶40}** Therefore, the county's first three assignments of error are overruled. Musial's sole assignment of error is sustained.   We remand the case to the trial court with instructions to certify the class and proceed on the merits of the class action.

It is ordered that plaintiff-appellant recover from defendants-appellees costs herein taxed.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MARY EILEEN KILBANE, J., CONCUR