BLANKENSHIP

v.

CFMOTO POWERSPORTS, INC.

2011-Ohio-6946.]

Court of Common Pleas of Ohio,
Clermont County.

No. 2009 CVH 1340.

Decided Nov. 29, 2011.

24

Elizabeth Wells and Ronald Burdge, for Plaintiff.

Dinsmore & Shohl, L.L.P. and H. Toby Schisler, for Defendant.

HADDAD, Judge.

{¶ 1} This matter came before the court pursuant to a renewed motion to certify the fifth claim as a class-action.

## FINDINGS OF FACT

{¶ 2} For purposes of this decision, the court will defer to its previous decision, *Blankenship v. CFMOTO Powersports, Inc.*, 161 Ohio Misc.2d 5, 2011-Ohio-948, 944 N.E.2d 769, for a full statement of the facts.

{¶ 3} In addition to those facts, and in relation to Count Five, the plaintiff alleges that the defendant engaged in false representations and marketing through its website and written warranty. The plaintiff is pursuing this claim in a class-action suit. The plaintiff alleges that this conduct constitutes unfair and/or deceptive consumer sales practices in violation of R.C. 1345.02 because the defendant represented through advertising and other marketing communications that the vehicles were new and free from defects and could be driven safely in normal operation. It is alleged that instead, the vehicles were not of the "standard, quality, or grade" they were represented and/or advertised to be.

## THE LEGAL STANDARD

{¶ 4} "A trial judge must make seven affirmative findings before a case may be certified as a class-action. Two prerequisites are implicitly required by Civ.R. 23, while five others are specifically set forth therein." *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 521 N.E.2d 1091, paragraph one of the syllabus. The first *implied* prerequisite is that an identifiable class must exist before certification is permissible, and the definition of the class must be unambiguous. Id. at 96. "The second *implied* prerequisite is that the class representatives must be members of the class" [Emphasis added.] Id. The following are *express* prerequisites: the class is so numerous that joinder of all members is impracticable—Civ.R. 23(A)(1); there are questions of law or fact common to the class—Civ.R.23(A)(2); the claims or defenses of the representative parties are typical of the claims or defenses of the class–Civ.R. 23(A)(3); and the representative parties will fairly and adequately protect the interests of the class—Civ.R. 23(A)(4). Id. at 97. Finally, "[a] trial court judge must find that one of the three Civ.R.23(B) requirements is met before a class may be certified." Id. at 94.

█ {¶ 5} Based upon the foregoing, the court finds that the seven require-ments for class certification are (1) an identifiable and unambiguous class; (2) the class representatives must be members of the class; (3) numerosity; (4) common-ality; (5) typicality; (6) the representative parties will fairly and adequately protect the interests of the class; and (7) one of the three requirements contained in Civ.R. 23(B) is met.

█ {¶ 6} "When a trial court considers a motion to certify a class, it must assume the truth of the allegations in the complaint, without considering the merits of those allegations and claims." *Nagel v. Huntington Natl. Bank*, 179 Ohio App.3d 126, 2008-Ohio-5741, 900 N.E.2d 1060, ¶ 10. The party seeking class certification has the burden of showing that class certification is appropriate. *State ex rel. Ogan v. Teater* (1978), 54 Ohio St.2d 235, 247, 375 N.E.2d 1233. The moving party must prove, by a preponderance of the evidence, that all of the aforementioned Rule 23 requirements are met. *Warner*, 36 Ohio St.3d at 94, 521 N.E.2d 1091. "[T]he failure to satisfy any one of the requirements will result in the denial of certification." *Simpson v. Prudential Ins. Co. of Am.* (1994), Butler App. No. CA93–09–173, 1994 WL 409656, *3.

## LEGAL ANALYSIS

██ {¶ 7} In this action, the plaintiff has asserted a class action under the CSPA. "[A] consumer may qualify for class-action certification under Ohio's CSPA only if the defendant's alleged violation of the Act is substantially similar to an act or practice previously declared to be deceptive by one of the methods identified in R.C. 1345.09(B)." *Marrone v. Philip Morris USA, Inc.*, 110 Ohio St.3d 5, 2006-Ohio-2869, 850 N.E.2d 31, ¶ 2. The supplier must have acted with prior notice that the conduct was deceptive or unconscionable. Id. at ¶ 9. Pursuant to R.C. 1345.09(B), there are two ways in which the supplier may be put on notice: (1) by rule adopted by the Attorney General under R.C. 1345.05(B)(2); or (2) by a court decision from this state that has been made available for public inspection by the Attorney General under R.C. 1345.05(A)(3). See R.C. 1345.09(B); *Marrone* at ¶ 9. "R.C. 1345.05(A)(3) provides that the Attorney General must '[m]ake available for public inspection all rules * * * together with all judgments, including supporting opinions, by courts of this state * * * determining that specific acts or practices violate section 1345.02 or 1345.03 of the Revised Code.'" *Marrone* at ¶ 14. If the cases cited involve industries and conduct that are very different from the defendant's, they do not provide "meaningful notice of specific acts or practices that violate the CSPA." Id. at ¶ 21.

█ {¶ 8} The only case cited by the plaintiff and proposed class members that the court found applicable is *Fribourg v. Vandemark* (July 26, 1999),

Clermont App. No. CA99–02–017, 1999 WL 552741, Public Inspection File # 1874. *Fribourg* involves the motor-vehicle industry, specifically the used-car industry. In that case, the plaintiffs, husband and wife, leased a used car from the defendant's business. The lease agreement involved a 1989 Chevrolet Beretta GT, but the vehicle leased was actually a standard Beretta. The defendant was aware that the vehicle was not the GT model, but misled the plaintiffs by leaving a GT emblem on the vehicle. The difference in value between the two vehicles was between $800 and $1,000. *Fribourg* determined that the defendant's conduct violated the CSPA. Therefore, the court finds that the defendant's alleged violations of the CSPA are substantially similar to an act or practice (false representations and marketing) previously declared to be deceptive, such that they were on notice that their alleged actions or practices could have been in violation of the CSPA.

{¶ 9} Having determined that the defendant was on notice, through *Fribourg*, that their alleged actions or practices could be in violation of the CSPA, the court must proceed to the specific requirements for class certification under Civ.R. 23(A).

## IDENTIFIABLE AND UNAMBIGUOUS CLASS

{¶ 10} The first requirement is that an identifiable class exists, and the definition of the class is unambiguous. The description must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *New Albany Park Condominium Assn. v. Lifestyle Communities,* 195 Ohio App.3d 459, 2011-Ohio-2806, 2011 WL 2409592, ¶ 31, quoting *Hamilton v. Ohio Sav. Bank* (1998), 82 Ohio St.3d 67, 71–72, 694 N.E.2d 442. The definition "must be precise enough 'to permit identification within a reasonable effort' " Id. quoting *Hamilton* at 72. Important elements to consider in defining a class include: "(1) specifying a particular group that was harmed during a particular time frame, in a particular location, in a particular way, and (2) facilitating a court's ability to ascertain its membership in some objective manner." Id. at ¶ 32, quoting *Reeb v. Ohio Dept. of Rehab. & Corr., Belmont Corr. Inst.* (S.D.Ohio, 2001), 203 F.R.D. 315, 319.

{¶ 11} Further, (" '[t]he mere existence of different facts associated with the various members of a proposed class is not by itself a bar to certification of that class. If it were, then a great majority of motions for class certification would be denied.' ") *New Albany* at ¶ 33, quoting *In re Consol. Mtge. Satisfaction Cases,* 97 Ohio St.3d 465, 2002-Ohio-6720, 780 N.E.2d 556, ¶ 10. If possible, the definition of the class should be premised upon the manner in which the defendant acted with respect to an ascertainable group of individuals. Id., citing *Hamilton* at 73.

{¶ 12} In this case, the proposed class is defined as (1) natural persons (2) who are Ohio residents and (3) are either first retail purchasers of a CFMOTO CF250T–3 or a CFMOTO CF250T–5, *or* currently own a CFMOTO CF250T–3 or a CFMOTO CF250T–5. The plaintiff asserted that the class would encompass motorcycles/scooters 2005–2009 models, as well as individuals who have purchased the vehicles from 2010 to the present. It is their contention that the false representations and marketing are continuing and did not cease in 2009, when this case was filed.

{¶ 13} The defendant does not dispute that an identifiable class exists, and that above definition of the class is unambiguous; however, the defendant contends that the class must be limited to past purchasers, because any future purchases would be so speculative that it would render it difficult to ascertain and identify the members of the class.

{¶ 14} The court finds that, by limiting the class to those to whom the defendant sold these motorcycles/scooters and to those who became owners at some point before the date of this decision makes the class readily identifiable without expending more than a reasonable effort. This is true particularly given that it is likely the class could be ascertained by simply looking at the defendant's records to determine those individuals who are first purchasers, and by researching BMV records to determine current owners. For this reason, the court finds that an identifiable class exists, and the definition of the class is unambiguous, as long as the class consists of only individuals who purchased the motorcycles/scooters through the date of this decision. Therefore, the court finds that the plaintiff has proven, by a preponderance of the evidence, the first requirement for Civ.R. 23(A) class certification.

### CLASS REPRESENTATIVES AND MEMBERSHIP

{¶ 15} The second prerequisite for class certification is that the plaintiff must be a member of the proposed class. To establish class membership, the plaintiff must demonstrate that he has proper standing. *New Albany,* 195 Ohio App.3d 459, 2011-Ohio-2806, 2011 WL 2409592, at ¶ 39, citing *Hamilton,* 82 Ohio St.3d at 74, 694 N.E.2d 442. To establish standing to sue as a class representative, the plaintiff "must possess the same interest and suffer the same injury shared by all members of the class that he or she seeks to represent." Id.

{¶ 16} The defendant states in its response to the renewed motion to certify that it will not contest that the plaintiff has proper standing to sue as a class representative.[1] The plaintiff, who is an Ohio resident, alleges an economic

---

1. The court would note that despite this statement, the defendant argues in its response to the plaintiff's supplemental brief that the plaintiff does not have standing to sue as a class representative.

injury resulting from the false representations and marketing on the defendant's website and in the written warranty provided with the same make and model of the motorcycle/scooter previously defined. This is the same type of injury alleged by the other proposed members of the class. The fact that there may be some small differences in the monetary amount of injury is of no consequence. Further, the fact that the plaintiff purchased only one model of the vehicle, and not both models, is of no significance because the premise of the action is the same for all models involved—i.e., that the defendant made false representations and marketing. Therefore, the court finds that the plaintiff has proven, by a preponderance of the evidence, the second requirement for Civ.R. 23(A) class certification.

## NUMEROSITY

{¶ 17} The third prerequisite for class certification is that the class be so numerous that joinder of all members is impracticable. See Civ.R. 23(A)(1). In Ohio, courts have generally declined to specify a numerical limit for the size of a class action. Instead, courts have held that this determination must be made on a case-by-case basis. There is authority, however, indicating that "[i]f the class has more than forty people in it, numerosity is satisfied; if the class has less than twenty-five people in it, numerosity probably is lacking; if the class has between twenty-five and forty, there is no automatic rule * * *." *Warner*, 36 Ohio St.3d at 97, 521 N.E.2d 1091; *New Albany*, 195 Ohio App.3d 459, 2011-Ohio-2806, 2011 WL 2409592, at ¶ 42.

{¶ 18} In determining whether numerosity has been satisfied, "[t]he mere 'possibility' that members of a class exist is insufficient. Rather, the movant must provide evidence that a number of people have been harmed by the nonmovant's actions." *Lasson v. Coleman*, Montgomery App. No. 21524, 2007-Ohio-3443, 2007 WL 1934320, ¶ 31. In proving that the numerosity requirement has been satisfied, the plaintiff must "show some evidence or reasonable estimate of the number of class members." *Williams v. Countrywide Home Loans*, Lucas App. No. L-01-1473, 2002-Ohio-5499, 2002 WL 31270283, ¶ 26. The plaintiff "may not rest on bare allegations or speculation." Id. However, it is permissible for the court to make common sense assumptions. Id.

{¶ 19} The court would note that the parties filed a stipulation in which they agreed that the defendant, CFMOTO Powersports, Inc., sold at least 56 of the 2008 model V–5 vehicles to dealerships in Ohio, with the expectation that they would sell those vehicles; however, the parties did not stipulate that all of these vehicles were sold.

{¶ 20} In attempting to reasonably estimate the number of class members, the plaintiff took the total number of vehicles sold in the United States from 2005 to 2009, which was 2,418, and divided by 50 to determine the average number sold

per state.[2] That quotient is 48.36. The issue then becomes whether this estimate is reasonable.

{¶ 21} While the plaintiff has not presented evidence of the exact amount sold, which it is capable of doing through a review of the BMV records and warranty records of the company, the court finds that the plaintiff is required only to reasonably estimate the amount. The court finds that it is also permitted, under *Williams,* to make common-sense assumptions.

{¶ 22} The parties stipulated that 56 of the 2008 model V–5 vehicles were sold to dealerships in Ohio so that they could be sold to consumers. The court would note that this is only the 2008 V–5 model. Even if the court were to assume that only a fraction of the 56 were sold in one year, the period involved in this case is a six year time frame and there are two separate models involved. Therefore, common sense dictates that there were at least 40 of the V–3 and V–5 models sold from 2005—present.

{¶ 23} Further, in a supplemental brief filed June 10, 2011, the plaintiff presented evidence that the class is in excess of 63 members at a minimum (the plaintiff plus 62 other consumers). Specifically, three CFMOTO dealers responded to subpoenas issued by the plaintiff. These responses reveal that at least 63 vehicles were sold to consumers in Ohio during the time period involved in this action.[3] The court would further note that only three of ten dealers responded to the discovery requests.[4]

{¶ 24} The defendant argues that this is not a case where there is a large class of individuals interested in or desirous of pursuing claims against CFMOTO. However, "[t]he question is not whether plaintiff has identified a 'class of individuals in need of this court's protection' * * *; the question is whether the [plaintiff has] proposed a class that is 'so numerous that joinder of all members is impracticable.'" *Lichoff v. CSX Transp., Inc.,* N.D.Ohio No. 3:01CV7399, 2004 WL 2280354, at 4 (Oct. 6, 2004). In making this determination, courts should consider the number of prospective members, as well as other factors related to the practicality of joinder, which include "avoidance of multiplicity of actions, geographic dispersment of class members, size of individual claims, financial resources of class members, and the ability of claimants to institute individual suits." *Id.*

---

2. See plaintiff's renewed motion to certify.

3. See supplemental brief in support of plaintiff's renewed motion for class certification.

4. *Id.*

{¶ 25} Based upon common-sense assumptions drawn from the stipulation and the evidence presented in the plaintiff's supplemental brief, the court finds that the plaintiff has presented a *reasonable estimate* that the members of the proposed class is in excess of 63 members. In this case, in the interest of judicial economy, it would be more prudent to certify a class action rather than have 63 different actions. While the class may be dispersed over a wide area, there is nothing to indicate that the filing of this action in Clermont County would prejudice any of the prospective class members. Because there was no evidence presented as to the remaining factors, the court will not address them at this time.

{¶ 26} Because the proposed class exceeds 40 members, as stated in *Warner,* 36 Ohio St.3d 91, 521 N.E.2d 1091, and because at least two of the five factors stated in *Lichoff* weigh in favor of class certification, the court finds that the plaintiff has proven, by a preponderance of the evidence, that the numerosity requirement has been satisfied.

### COMMONALITY

{¶ 27} The fourth prerequisite for class certification is that there are questions of law or fact common to the class. See Civ.R. 23(A)(2). Courts have generally given a permissive application to this requirement. *New Albany,* 195 Ohio App.3d 459, 2011-Ohio-2806, 2011 WL 2409592, at ¶ 45; *Warner,* 36 Ohio St.3d 91, 521 N.E.2d 1091, at paragraph three of the syllabus. This requires a common nucleus of operative fact, but does not require that all questions of law or fact raised in the dispute are common to all class members. *New Albany* at ¶ 45, citing *Hamilton,* 82 Ohio St.3d at 77, 694 N.E.2d 442. Additionally, the court should not deny certification based solely upon disparity in damages. Id., citing *Ojalvo v. Ohio State Univ. Bd. of Trustees* (1984), 12 Ohio St.3d 230, 232, 466 N.E.2d 875. The commonality requirement applies to the basis of liability only, and not to damages. Id.

{¶ 28} Here, the basis for liability is the false representations and marketing contained within the written warranty and on the defendant's website. This basis for liability is a common factor for all prospective class members. The facts pertaining to the misrepresentations and false marketing are the same for every member, and the law relevant to misrepresentation is also common for all members. While there may be disparity in the amount of damages based upon possible differences in the purchase prices of the vehicles, this is of no significance because commonality applies only to the basis of liability, and not to damages.

{¶ 29} Based upon the foregoing, the court finds that the plaintiff has proven, by a preponderance of the evidence, that there are questions of law or fact in

common to the entire class; thus, the fourth element for class certification has been satisfied.

## TYPICALITY

{¶ 30} The fifth requirement for class certification is that the claims or defenses of the representative parties must be typical of the claims or defenses of the class. See Civ.R. 23(A)(3). "The typicality requirement has been found to be satisfied where there is no express conflict between the representatives and the class." *New Albany*, 195 Ohio App.3d 459, 2011-Ohio-2806, 2011 WL 2409592, at ¶ 48, quoting *Warner*, 36 Ohio St.3d at 97–98, 521 N.E.2d 1091. An exact identity of claims is not required. Id., citing *Baughman v. State Farm Mut. Auto. Ins. Co.* (2000), 88 Ohio St.3d 480, 485, 727 N.E.2d 1265. "The rationale for this provision is that a plaintiff with typical claims will pursue his or her own self-interest in the litigation and in so doing will advance the interests of the class members, which are aligned with those of the representative. In such a case, the adjudication of the plaintiff's claim regarding defendant's wrongdoing would require a decision on the common question of the defendant's related wrongdoing to the class generally." Id. at ¶ 49, quoting *Baughman* at 485.

{¶ 31} "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." Id. at ¶ 50, quoting *Baughman*, 88 Ohio St.3d at 485, 727 N.E.2d 1265.

{¶ 32} In this case, the plaintiff's claims arise from the same course of conduct as the claims of the prospective class members and are based upon the same theory—i.e., that the defendant's website and written warranty contain misrepresentations regarding the classification of the vehicles in question as motorcycles rather than scooters. There appears to be no conflict between the plaintiff, as the class representative, and the prospective members of the class.

{¶ 33} Based upon the foregoing, the court finds that the plaintiff has proven, by a preponderance of the evidence, that the claims or defenses of the plaintiff are typical of the claims or defenses of the class as a whole; thus, the fifth element for class certification has been satisfied.

## FAIR AND ADEQUATE REPRESENTATIONS

{¶ 34} The sixth prerequisite for class certification is that the representative parties will fairly and adequately protect the interests of the class. See Civ.R. 23(A)(4). This requirement is divided into two parts: (1) the adequacy of

the representative class members and (2) the adequacy of counsel for the representative class members. *New Albany*, 195 Ohio App.3d 459, 2011-Ohio-2806, 2011 WL 2409592, at ¶ 53; *Warner*, 36 Ohio St.3d at 98, 521 N.E.2d 1091.

### (1) The Adequacy of the Representative Class Members

{¶ 35} A class representative is adequate, provided that his interest is not antagonistic to that of the prospective class members. *New Albany* at ¶ 54, citing *Marks v. C.P. Chem. Co., Inc.* (1987), 31 Ohio St.3d 200, 203, 509 N.E.2d 1249. Implicit in this concept "is the idea that those being represented possess similar claims constituting a cohesive class and the representative is a member of this class." *Westgate Ford Truck Sales, Inc. v. Ford Motor Co.*, Cuyahoga App. No. 86596, 2007-Ohio-4013, 2007 WL 2269471, ¶ 60. The Ohio Supreme Court held that, to be inadequate, there must be a " 'Serious discrepancy between the position of the representative and that of the class.' " *Westgate Ford* at ¶ 64, quoting *Baughman*, 88 Ohio St.3d at 487, 727 N.E.2d 1265. "Doubts concerning adequate class representation are resolved 'in favor of upholding the class, subject to the trial court's authority to amend or adjust its certification order as developing circumstances demand including the augmentation or substitution of representative parties.' " *Miller v. Volkswagen of Am., Inc.*, Erie App. No. E-07-047, 2008-Ohio-4736, 2008 WL 4278178, ¶ 41, quoting *Baughman* at 487–488.

{¶ 36} In this case, the plaintiff, like the prospective members of the class, is a consumer of the motorcycles/scooters at issue. While it may be true that the plaintiff purchased only one model and did not purchase every model at issue, his claim is based upon the same facts and legal theories as those of every other class member, and each member of the class, like the plaintiff, is seeking the same type of damages. For this reason, the court finds that the plaintiff's interest is not antagonistic to that of the prospective class members.

### (2) The Adequacy of Counsel for the Representative Class Members

{¶ 37} "The representatives' counsel will be deemed adequate where the lawyers are 'qualified, experienced and generally able to conduct the proposed litigation.' " *Helman v. EPL Prolong, Inc.*, Columbiana App. No. 2001 CO 43, 2002-Ohio-5249, 2002 WL 31170363, ¶ 40, quoting *Hansen v. Landaker* (Dec. 7, 2000), 10th Dist. No. 99AP–1134, 2000 WL 1803954. "The issue of whether counsel is competent to handle the action can be the most difficult in the Rule 23 analysis. The fact that an attorney has been admitted to practice does not end the judicial inquiry. An attorney should be experienced in handling litigation of the type involved in the case before class certification is allowed. Close scrutiny should be given to the attorney's qualifications to handle the matter with which

he is entrusted. For example, a gifted intellectual property lawyer might not be qualified to handle an environmental case. It also follows that a personal injury attorney probably should not be entrusted with a complex antitrust case under the Valentine Act. [Because] crucial questions of due process are involved, the trial court should exercise great care in its determination of this element. Although this task may be most unpleasant, it is one of the most vital." *Helman* at ¶ 41, quoting *Warner*, 36 Ohio St.3d at 98, 521 N.E.2d 1091. See also *Lasson*, 2007-Ohio-3443, 2007 WL 1934320, at ¶ 37–38. However, "the better rule is that in the absence of evidence that counsel is unable to handle complex litigation, there is no need for the trial court to require significant evidence of counsel's ability." *Lasson* at ¶ 42.

{¶ 38} The plaintiff asserts in his motion to certify that his counsel are experienced consumer-law attorneys who have worked vigorously in other consumer-law class actions and individual actions for many years. He asserts that his lead counsel has taken a class action through the complete process of certification, trial, and appeal. He asserts that the requirement under Civ.R. 23(A)(4) mandating adequacy of counsel has been satisfied.

{¶ 39} Plaintiff's counsel has submitted the "Affidavit of Attorney Ronald L. Burdge in Support of Plaintiff's Renewed Motion to Certify the Fifth Claim as a Class-action." In this affidavit, Burdge states that he has significant experience representing Ohio consumers on a classwide basis, and is one of the few attorneys who has taken a class action through the complete process of certification, trial, and appeal.

{¶ 40} Burdge cites several cases in which he represented the class, but the most notable of those is *Zeff v. Rose Chevrolet, Inc.* (1989), 62 Ohio App.3d 54, 574 N.E.2d 562; *State v. Rose Chevrolet, Inc.* (June 28, 1993), Butler App. No. CA91–12–214, 1993 WL 229392. That case involved a violation of the Ohio Consumer Sales Practices Act. Burdge represented the plaintiffs through the initial filing, class certification, three test trials, and two appeals. The classwide verdict was upheld on appeal.

{¶ 41} Also notable is his representation of the class in *Wetzel v. Sweeney Automotive, Inc.* and *Rogers v. Brown*, both of which involved violations of the Ohio Consumer Sales Practices Act. In *Wetzel*, a settlement was reached following class certification and included injunctive relief, monetary recovery, and a cy pres award. In *Rogers*, judgment was entered on behalf of the class and included monetary and injunctive relief.

{¶ 42} In addition to his representation of clients in class-action suits, Burdge states that he attends seminars and continuing-legal-education courses on class-action suits in state and federal courts, has several books and treatises on class

actions in his office, and has been a member of the National Association of Consumer Advocates for approximately 15 years.

{¶ 43} Attorney Elizabeth Wells, who is co-counsel in this case, has been supervised by Burdge, receiving training in the field of consumer law before and during her work in this case. He asserts that she is qualified to represent the prospective class as co-counsel.

{¶ 44} In its response, the defendant does not dispute that Burdge is a qualified and experienced attorney; however, it disagrees that Burdge's affidavit demonstrates that he is qualified to serve as class counsel under these particular facts. Specifically, the defendant asserts that Burdge has not been involved in any class actions associated with the Department of Transportation regulations, which it asserts go to the very heart of the claims pursued by the plaintiff.

{¶ 45} Having considered the affidavit of counsel and the defendant's memorandum in response, the court finds that plaintiff's counsel are experienced consumer-law attorneys and have been involved in the prosecution of class actions in the past. Specifically, they have been involved in three class-action litigations involving the Consumer Sales Practices Act, which is the exact statute at issue here. While it may be true that this case involves certain Department of Transportation regulations, that issue is peripheral at best. Instead, the main issue in this case is whether the defendant violated the Consumer Sales Practices Act when it represented that the vehicles at issue were motorcycles rather than scooters. Further, even if the federal regulations were essential to the prosecution of this action, the court would note that Burdge's affidavit indicates that he has been involved in class-action litigation that hinged upon federal regulations. Even though he did not specifically state that he is experienced in Department of Transportation regulations, he has proven that he is experienced in interpreting and applying other federal regulations, and there is no reason to suspect that he cannot interpret and apply any federal regulations at issue in this case.

{¶ 46} Because plaintiff's counsel has extensive experience in the field of consumer law, and specifically the Consumer Sales Practices Act, the court finds that they are qualified, experienced, and generally able to conduct the proposed class litigation; thus, they are adequate representatives for the prospective class.

{¶ 47} Based upon the foregoing, the court finds that the plaintiff has proven, by a preponderance of the evidence, that the plaintiff and his counsel will fairly and adequately protect the interests of the class; thus, the sixth prerequisite for class certification has been satisfied.

## CIV.R. 23(B) REQUIREMENTS

{¶ 48} The seventh, and final, prerequisite for class certification is that one of the three provisions of Civ.R. 23(B) has been satisfied. The plaintiff argues that

each of the three provisions of Civ.R. 23(B) has been satisfied; however, the defendant asserts that only provision Civ.R. 23(B)(3) is relevant to this action.

{¶ 49} *Civ.R. 23(B)(1)(a)*: Subsection (B)(1)(a) applies only if separate actions could lead to incompatible standards of *conduct.*[5] *Warner,* 36 Ohio St.3d at 95, 521 N.E.2d 1091. As in *Warner,* the case at bar does not appear to involve a situation that could result in differing standards of conduct if separate actions were pursued. This is true, although it is possible that some plaintiffs could recover damages and others would not. This is the situation covered by subsection (B)(3) rather than (B)(1).

{¶ 50} *Civ.R. 23(B)(1)(b)*: Subsection (B)(1)(b) is equally inapplicable because it applies in situations where only a limited amount of money is available and there is a risk that separate actions would deplete the fund before all deserving parties could make a claim. Id. It is, therefore, inappropriate for this type of case.

{¶ 51} *Civ.R. 23(B)(2)*: "Civ.R. 23(B)(2) has, as its primary application, a suit seeking injunctive relief." Id. This provision applies when the "party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *Searles v. Germain Ford of Columbus, L.L.C.,* Franklin App. No. 08AP–728, 2009-Ohio-1323, 2009 WL 756645, ¶ 15. There are two requirements for certification under Civ.R. 23(B)(2): (1) the class action must seek primarily injunctive relief and (2) the class must be cohesive. *Fowler v. Ohio Edison Co.,* Jefferson App. No. 07–JE–21, 2008-Ohio-6587, 2008 WL 5233476, ¶ 64, citing *Wilson v. Brush Wellman, Inc.,* 103 Ohio St.3d 538, 2004-Ohio-5847, 817 N.E.2d 59, ¶ 13.

{¶ 52} Certification under this provision is dependent upon the form of relief primarily sought; thus, if injunctive relief is merely incidental to the primary claim for money damages, certification under Civ.R. 23(B)(2) is inappropriate. *Wilson* at ¶ 17. "The gravamen of the remedy * * * is that a defendant is about to commit an act that will produce immediate and irreparable harm for which no adequate legal remedy exists." *Searles* at ¶ 16.

{¶ 53} In terms of the first requirement, the *primary* remedy sought must be injunctive relief. In this case, the plaintiff and prospective class members have requested injunctive relief. They are requesting that the court order the defendant to notify all current consumers of the vehicles about the

---

**5.** "This subsection applies, for example, to situations where a class may challenge the validity of a lease, the constitutionality of a term within a municipal bond or a voting rights statute." See *Warner,* 36 Ohio St.3d 91, 521 N.E.2d 1091, at fn. 2.

recall that arose as a result of the defective braking system and to stop the sale of any motorcycle/scooter that contains the defective braking system at issue in this case. They are also requesting that the court order the defendant to either supply replacement parts or to reimburse the plaintiff and class members for their own purchase of replacement parts. In addition to injunctive relief, the plaintiff and prospective class members are seeking monetary damages.

{¶ 54} In order for the injunctive relief to be the *primary* remedy sought, the court must find that the defendant is about to commit an act that will produce immediate and irreparable harm for which no adequate legal remedy exists. See *Searles,* 2009-Ohio-1323, 2009 WL 756645, at ¶ 16. While the plaintiff and prospective class members are seeking injunctive relief, they are not seeking injunctive relief for an act that the defendant is *about* to commit that will produce immediate and irreparable harm for which no adequate legal remedy exists. This class is limited to *current* consumers of the vehicles in question; thus, any harm resulting from the purchase of the vehicles in question has already occurred. The injunctive relief sought would not assist the plaintiff and prospective class members, but would instead assist future purchasers of the motor vehicles at issue. Additionally, the plaintiff and prospective class members are seeking monetary damages to compensate them for the defendant's false representations and marketing.

{¶ 55} Because the alleged harm in this case has already occurred to the plaintiff and class members, and the requirement under Civ.R. 23(B)(2) is that the injunctive relief must be designed to prevent the defendant from committing an act that *will* produce immediate and irreparable harm for which no legal remedy exists, and because the plaintiff and prospective class members are seeking an alternative remedy in the form of monetary damages, the court finds that the requested injunctive relief is merely incidental to the primary claim for money damages. Because the first requirement for Civ.R. 23(B)(2) certification has not been satisfied, the court need not address the second requirement of cohesiveness. Based upon the foregoing, the court finds that certification under Civ.R. 23(B)(2) is inappropriate.

{¶ 56} *Civ.R.23(B)(3):* In terms of Civ.R. 23(B)(3), the court finds that this provision applies to a "damage" action. *Warner,* 36 Ohio St.3d at 95–96, 521 N.E.2d 1091. This provision " 'asks whether "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" so "that a class-action is superior to the available methods for the fair and efficient adjusdication [sic] of the controversy." ' " *New Albany,* 195 Ohio App.3d 459, 2011-Ohio-2806, 2011 WL 2409592, at ¶ 56, quoting *Searles v. Germain Ford of Columbus, L.L.C.,* Franklin App. No. 08AP–728, 2009-Ohio-1323, 2009 WL 756645, at ¶ 20, quoting Civ.R. 23(B)(3). In other words, there are two requirements for certification under Civ.R. 23(B)(3): "(1)

questions of law or fact common to the members of the class predominate over any questions affecting only individual members ('predominance'); and (2) a class-action is superior to other available methods for the fair and efficient adjudication of the controversy ('superiority')." *Simpson*, Butler App. No. CA93–09–173, 1994 WL 409656, at *4. In determining whether predominance and superiority have been satisfied, the following four factors are relevant: "(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class-action." Id. The court notes that this list is nonexclusive and advisory in nature, and it merely emphasizes the need to "focus on the efficiency and economy elements of the class-action." Id. "[T]he key should be whether the efficiency and economy of common adjudication outweigh the difficulties and complexity of individual treatment of class members' claims." *Warner* at 96.

{¶ 57} *Predominance*: "In evaluating the predominance requirement, the Ohio Supreme Court has held: [I]n determining whether common questions of law or fact predominate over individual issues, it is not sufficient that common questions merely exist; rather, the common questions must represent a significant aspect of the case and they must be able to be resolved for all members of the class in a single adjudication." *Simpson*, Butler App. No. CA93–09–173, 1994 WL 409656, at *5, citing *Schmidt v. Avco Corp.* (1984), 15 Ohio St.3d 310, 313, 473 N.E.2d 822.

{¶ 58} The first requirement for Civ.R. 23(B)(3) certification is predominance, meaning that questions of law or fact common to the members of the class predominate over any questions affecting only individual members. This court was concerned that, because not all prospective class members may have reviewed the website or the written warranty, not all may have purchased the motorcycle/scooter in reliance on the alleged misrepresentations and false marketing. However, in *Amato v. Gen. Motors Corp.* (1982), 11 Ohio App.3d 124, 463 N.E.2d 625, the court held that in order to prove consumer deception under R.C. 1345.01 et seq., the deception can be established without proof that the individual class member-plaintiffs were exposed to a misleading representation or advertisement. *Amato*, at paragraph one of the syllabus. See also *Cope v. Metro. Life Ins. Co.* (1998), 82 Ohio St.3d 426, 429–430, 696 N.E.2d 1001 ("a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, because such proof obviates the need to examine each class member's individual position").

{¶ 59} "In a class action under R.C. 1345.01 *et seq.* plaintiffs' reliance upon some misleading representation or advertisement may be sufficiently established by inference or presumption from circumstantial evidence to warrant submission to a jury without direct testimony from each member of the class. Such presumption shifts to the defendant the burden of going forward class wide with evidence to prove non-reliance on the part of plaintiffs." *Amato,* 11 Ohio App.3d 124, 463 N.E.2d 625, at paragraph two of the syllabus. "[P]roof of extensive advertising is sufficient to make a prima facie case for actual exposure. Of course exposure proof may be enhanced by additional evidence of exposure such as, but not limited to, a custom or practice of distributing express written warranties to prospective buyers with terms relevant to the plaintiff's claim." Id. at 127. Further, the Ohio Supreme Court has previously determined that "the existence of common misrepresentations obviates the need to elicit individual testimony as to each element of a fraud or misrepresentation claim, especially where written misrepresentations or omissions are involved." *Cope,* 82 Ohio St.3d at 430, 696 N.E.2d 1001.

{¶ 60} In the current case, the only remaining allegation is that the website and written warranties issued by the defendant contained false representations, i.e., that the vehicle in question was a motorcycle rather than a scooter. The court finds that this case involves misrepresentations contained in a written warranty provided to the prospective members of the class. The allegation is that all prospective class members received the same written warranty from the defendant. The court further finds that the misrepresentations were contained within a website, which, by its very nature, is widely disseminated and, thus, constitutes "extensive advertising." For these reasons, and pursuant to *Amato* and *Cope,* the court finds that each class member need not prove that he or she saw the website or reviewed the warranty or relied upon the alleged misrepresentations. Instead, the plaintiff's presentation of evidence that the misrepresentations were contained within a written warranty and on the website is enough for the court to find that common questions exist and that they represent a significant aspect of the case. For this reason, the court can resolve the common questions for all members of the class in a single adjudication; therefore, the court finds that the "predominance" requirement of Civ.R. 23(B)(3) has been satisfied.

{¶ 61} *Superiority* : "In determining whether a class-action is superior to other available methods for fair and efficient administration of the controversy pursuant to Civ.R. 23(B)(3), the trial court must make a comparative evaluation of the other procedures available to determine whether a class-action is sufficiently effective to justify the expenditure of judicial time and energy involved therein." *Simpson,* Butler App. No. CA93–09–173, 1994 WL 409656, at

7, citing *Schmidt,* at 15 Ohio St.3d at 313, 473 N.E.2d 822. "[A] class-action must be superior to all other available methods and one of the tests of superiority is the manageability of the action." Id. "The policy at the very core of the class-action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class-action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Hamilton,* 82 Ohio St.3d at 80, 694 N.E.2d 442.

{¶ 62} The defendant argues that class certification is not appropriate because there have been no other lawsuits filed that are premised upon the issues involved in this case. However, the court finds that this argument actually weighs in favor of class certification rather than against it. "Civ.R. 23(B)(3)(b) directs the court to consider the 'extent and nature of any litigation concerning the controversy already commenced by or against members of the class.' However, [the defendant's] argument turns this factor on its head. The *presence* of parallel, individual actions tends to weigh *against* class certification, while the *lack* of parallel lawsuits tends to weigh in *favor* of certification." *Hamilton,* 82 Ohio St.3d at 81, 694 N.E.2d 442.

{¶ 63} In this case, there have been no individual attempts to institute a parallel action or to intervene in this action, and it is unlikely that any new suits will be filed given the relatively small individual recoveries and the massive duplication of time, effort, and expense that would be involved. Further, the prospective class is certainly not so large as to be unwieldy or unmanageable. Additionally, based upon the facts of the case, class-action treatment would eliminate the potential danger of varying or inconsistent judgments. See *Hamilton,* 82 Ohio St.3d at 80, 694 N.E.2d 442. For these reasons, the court finds that a class action is superior to all other available methods; thus, the court finds that this final requirement for class certification has been satisfied.

### ADDITIONAL ARGUMENTS

{¶ 64} The defendant, in its response to the plaintiff's supplemental brief, argues that Blankenship lacks standing to serve as a class representative because the defendant has already refunded the entire purchase price of the vehicle in question. It also asserts that the plaintiff is required to make an election of remedies and cannot sue for damages and seek rescission.

{¶ 65} The court would note that these arguments are not in response to the plaintiff's supplemental brief, and they extend beyond the boundaries set by the court in its discussion with counsel regarding supplemental briefs. However, although the arguments are nonresponsive and go beyond the court's discussions

with counsel, in an interest of fairness to the defendant, the court will address each of these issues.

{¶ 66} The court finds that the defendant's arguments fail for several reasons:

{¶ 67} While the defendant has paid the purchase price of the vehicle to the plaintiff, the court finds that he may be entitled to forms of relief besides the purchase price. A full damages hearing has not yet been held.

{¶ 68} Civ.R. 23 does not require the plaintiff to elect remedies. The Civil Rules do not require election of remedies prior to certification. Rather, the issue of remedies and damages does not become an issue until after the court decides whether to certify the class.

{¶ 69} The allegations in the claims for which the plaintiff has been compensated are distinct from the allegations in the fifth claim. The fifth claim is premised upon the damages incurred by the class as a result of the misrepresentation of the defendant in its written warranty and on its website. The claims for which the plaintiff has been compensated are premised upon the actual defects in the motorcycle/scooter, which are individualized and may not have been suffered by other members of the class. They do not relate to the misrepresentations regarding whether the vehicle is a motorcycle or a scooter, but instead relate to actual physical defects in the plaintiff's vehicle.

{¶ 70} For the aforementioned reasons, the court finds that it of no consequence to class certification that the plaintiff has recovered on his individual claims when those claims are different from those asserted in the class action. Further, at this stage, the court finds that the plaintiff is not required to elect between damages and rescission. Therefore, the court finds that the defendant's additional arguments are without merit.

## CONCLUSION

{¶ 71} Based upon the foregoing, and having considered the competent and credible evidence, the court finds that the plaintiff has proven, by a preponderance of the evidence, each element for class certification; therefore, the court hereby grants the plaintiffs motion to certify the fifth claim as a class action.

{¶ 72} The class shall include: (1) natural persons (2) who are Ohio residents and (3) are either *first retail purchasers* of a CFMOTO CF250T–3 or a CFMOTO CF250T–5, *or currently own* (as of the date of this decision) a CFMOTO CF250T–3 or a CFMOTO CF250T–5.

{¶ 73} The court would note that pursuant to Civ.R. 23(C)(1), this decision and order is conditional and may be altered or amended before the decision on the merits if the defendant files a motion to decertify the class and the court

determines that the plaintiff cannot satisfy one of the prerequisites for class certification.

{¶ 74} It is ordered that this decision shall serve as the judgment entry in this matter.

So ordered.